## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

COREY DESIMONI and JAMES
REITER, individually and on behalf of
all similarly situated

       Plaintiffs,

v.                                                                    Case No:   2:15-cv-366-FtM-99CM

TBC CORPORATION,

       Defendant.

_____

## REPORT AND RECOMMENDATION[1]

This matter comes before the Court upon review of Plaintiffs' Motion for Conditional Certification and Facilitation of Court-Authorized Notice Pursuant to 29 U.S.C. §216 & Supporting Memorandum of Law ("Motion for Certification") (Doc. 10)[2] filed on July 28, 2015.   On September 14, 2016, Defendant filed its Opposition to

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.   **In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation, they promptly may file a joint notice of no objection.**

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Plaintiff's Motion for Certification.  Doc. 28.  On November 10, 2015, the Motion was referred to the undersigned.  For the reasons that follow, the Court recommends that the motion be granted.

## A. Background

On June 19, 2015, Plaintiffs filed this action on behalf of themselves and other similarly situated individuals against their former employer, TBC Corporation ("TBC" or "Defendant"), for alleged violations of the overtime provisions of the Fair Labor Standards Act ("FLSA").  *See* Doc. 1.  Plaintiffs Corey Desimoni and James Reiter are mechanic/technicians ("mechanics") who worked for TBC within the state of Florida and whose primary job duties included the inspection, diagnosis, repair, and installation of motor vehicle mechanical services for Defendant's clientele.  Doc. 10 at 4.  Desimoni began working for TBC in February 2015 in its Seminole County, Florida location.  *Id.* at 6.  Reiter worked for TBC from December 2012 until October 2013 in one of its Lee County, Florida locations.  *Id.*

Plaintiffs and all other mechanics employed by TBC throughout the state of Florida all are paid pursuant to the same compensation plan.  Docs. 1 ¶ 33, 10 at 7, 28 at 3.  Plaintiffs' assertion that all mechanics were paid pursuant to the same compensation plan is supported by TBC's own declaration.  Doc. 28-1.  Under this plan, a mechanic's compensation is based on two components.  First, TBC sets an hourly "flat rate" for each mechanic, which is based on the mechanic's experience and certifications.  Doc. 28-1 ¶ 4.  Then, TBC multiplies the flat rate by the mechanic's "turned hours," which is a pre-established amount of time designated by TBC for each

service.  *Id.*  TBC describes the "turned hours" as "an industry-based standard that estimates how long each service should require" regardless of how long it actually takes a particular mechanic to complete the service.  *Id.*  According to TBC, "in any week when a mechanic's total commissions do not equal at least one and one-half times the federal minimum wage (based on actual hours worked), TBC supplements the mechanic's pay (referred to as 'differential pay') so it equals $11.02 per hour."  *Id.* ¶ 5.  Plaintiffs do not dispute that TBC pays its mechanics $11.02 per hour.  Docs. 1 ¶ 8, 10 at 9 nn.9-14.

Plaintiffs allege that TBC's compensation plan violates federal law for wrongfully classifying Plaintiffs and other Florida mechanics as "exempt" under 29 U.S.C. § 207(i).  Doc. 10 at 2.  Specifically, Plaintiffs argue that TBC violated federal law in failing to use the Florida minimum wage to calculate the overtime pay owed to Florida employees.  *Id.*  Plaintiffs seek conditional certification of a putative class comprised of current and former mechanic/technicians who: (1) worked for Defendant within the state of Florida within the three (3) years preceding the filing of this lawsuit; and (2) worked more than forty (40) hours per week and were paid using a "Commission Pay Plan," but who did not receive any overtime compensation in weeks when they worked more than forty (40) hours.  Doc. 10-1 ¶ 4.[3]

---

[3] Throughout their motion, Plaintiffs have identified the class in three different ways; however, for the purposes of this Report and Recommendation, the class definition set forth in the proposed Notice will control.   Compare Docs. 10 at 4, 10 at 10, 10 at 25, with 10-1 ¶ 4.

### B.   Legal Standard and Analysis

An FLSA action for overtime pay can be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).   Unlike a class action under Fed. R. Civ. P. 23, prospective plaintiffs in an FLSA action must expressly consent to join the class. 29 U.S.C. § 216(b) (providing "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").   The Eleventh Circuit has recommended a two-tiered approach to determine whether to certify a collective action under section 216(b). *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial.

*Id.* (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir.1995)).

At the notice stage, relevant here, Plaintiffs must show a reasonable basis for their claims that there are other similarly situated employees.

- 4 -

*Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). In determining whether employees are similarly situated, the Court must consider whether the employees are similar with respect to their job requirements and pay provisions. *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiffs need only demonstrate that their positions are similar, not identical, to the positions held by the putative plaintiffs. *Morgan*, 551 F.3d at 1260 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). Although the standard is fairly lenient, "there must be more than only counsel's unsupported assertions that FLSA violations are widespread and that additional plaintiffs would come [forward]." *Morgan*, 551 F.3d at 1261 (citing *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)). Moreover, "[t]he district court should satisfy itself that there are other employees . . . who desire to opt-in." *Dybach*, 942 F.2d at 1567. "Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated employees." *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-cv-00470-T-27, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012).

Here, two named Plaintiffs, Corey Desimoni and James Reiter, have filed a lawsuit. Doc. 1. Three opt-in Plaintiffs, Louis Rodriguez, Rex Earls, and Francis E. O'Brien III, have filed consents to join. Docs. 3-1, 13-1, 35-1. Desimoni's declaration states that he worked for TBC as a "mechanic/technician" at two different locations in Seminole County, Florida. Doc. 2-1. He states that "[m]echanics/technicians regularly work more than 40 hours a week without overtime

pay" and that he is "aware of other mechanics/technicians that would like to receive unpaid overtime if they are permitted to join." *Id.* According to Desimoni's declaration, "[t]he primary jobs of mechanics/technicians are the same regardless of location. We all service motor vehicles." *Id.* The consents to join filed by the opt-in Plaintiffs are similar in substance. They allege that the opt-in Plaintiffs' primary job duties were to service motor vehicles, that all "mechanics/technicians" were paid under the same pay policy, that they worked in excess of forty hours per week but did not receive overtime pay, and that they are aware of other mechanics/technicians who would like to receive their unpaid overtime if they are notified of their rights. *See* Docs. 3-1, 13-1, 35-1. The opt-in Plaintiffs either are current or former employees who worked in TBC's locations in Brevard County, Florida or in the cities of Jacksonville or Bradenton, Florida. Docs. 3-1, 13-1, 35-1.

Based on the pleadings, exhibits, and consent forms, TBC employs mechanics throughout the state of Florida who have similar job requirements and pay provisions as Plaintiffs. Defendant's declaration of its vice president of human resources confirms that TBC employs mechanics to provide tire and auto services to the general public, pays them by commission, and classifies them as exempt under Section 7(i) of the FLSA. Doc. 28-1. The Court is satisfied that Plaintiffs have met their burden of showing a reasonable basis that there are other employees who are similarly situated.[4] TBC makes several arguments against this conclusion, which the Court will address below.

---

[4] The Court is cognizant that Defendant has a pending Motion to Compel Arbitration with respect to Plaintiff Corey Desimoni. Doc. 19. Regardless of the outcome of that

TBC first argues that the members of the putative class are not similarly situated because each mechanic's commissions are based on the product of turned hours multiplied by the mechanic's flat hourly rate, the latter of which varies greatly "from mechanic to mechanic." Doc. 28 at 10. At this stage of the proceedings, however, Plaintiffs' burden is not high, and they need only show that their positions are similar, not identical. *Morgan*, 551 F.3d at 1260 (citing *Grayson*, 79 F.3d at 1096)). TBC next attacks Plaintiffs' evidence and further argues that Plaintiffs have not identified similarly situated putative class members who desire to, or can, opt in. Doc. 28 at 11. TBC relies on *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159 (D. Minn. 2007), *Delano v. MasTec, Inc.*, No. 8:10-cv-320-T-27MAP, 2011 WL 2173864 (M.D. Fla. June 2, 2011), and *Simpkins v. Pulte Home Corp.*, No. 608-cv-130-ORL-19DAB, 2008 WL 3927275, at *3 (M.D. Fla. Aug. 21, 2008) as support for this argument. Each case, however, is distinguishable or non-dispositive on the issue.

In *Parker*, the only evidence that the plaintiffs proffered were their own affidavits in which they averred that potential plaintiffs may exist. 492 F. Supp. 2d at 1165-66. The court held that without "at least *some* evidence indicating that others will opt in to this lawsuit, the Court perceives no basis to conclude that this is an appropriate case for collective-action status-it is simply a lawsuit involving two plaintiffs." *Id.* (internal quotations omitted). *Parker* is inapposite because the present case contains more than Plaintiffs' own assertions that other potential

---

motion, the analysis of this Report and Recommendation does not change, as the remaining Plaintiff, James Reiter, is not subject to the motion to compel arbitration and can pursue this action as a class representative.

plaintiffs "may" join the lawsuit, and three opt-in Plaintiffs already have filed consents to join.   In *Delano*, the court found that the plaintiffs had not demonstrated a reasonable basis there existed other aggrieved employees who desired to join when the case had been pending for fifteen months and the parties had completed "substantial discovery," yet the plaintiffs could produce only three potential opt-ins. 2011 WL 2173864 at *6.   *Delano* also is distinguishable, for there is no suggestion that the parties in this case have engaged in any discovery that led to futile efforts to identify more potential opt-ins.[5]   Finally, in *Simkins*, the plaintiff submitted affidavits of employees from five states who attested to the same facts regarding job responsibilities and duties, hours worked, and failure to be paid overtime.   2008 WL 3927275, at *3.   The affidavits featured nearly identical language to the plaintiff's own affidavit, except for insertion of different names and locations.   *Id.*   The court noted, "[while the defendant] is correct that [plaintiff's] declarations lack substance and bear the signs of cookie-cutter[] form affidavits . . . , the affidavits, combined with [defendant's] own evidence and the pleadings, establish several essential facts that persuade this Court that the low standard for conditional certification is met."   *Id.* at *7 (internal quotations omitted).   *Simkins*, therefore, is not dispositive on the issue and further supports this Court's conclusion.

Moreover, evidence of similarly situated employees who desire to opt in may be based on consents to join the lawsuit filed by other employees, as is the case here.

---

[5] In fact, no Case Management Report has yet been submitted for the entry of a Case Management and Scheduling Order, and therefore no discovery has been conducted in this case.   Doc. 42 at 3.

*Hart*, 2012 WL 6196035, at \*4.   This Court has held that the consents of two opt-in plaintiffs and the plaintiff's declaration was sufficient reasonable basis to believe there are other employees who may desire to opt-in.   *Teahl v. The Lazy Flamingo, Inc.*, No. 2:13-cv-833-FtM-38CM, 2015 WL 179367, at \*6 (M.D. Fla. Jan. 14, 2015) (citing *Robbins–Pagel v. Puckett*, No. 6:05-cv-1582-Orl-31DAB, 2006 WL 3393706, at \*2 (M.D.Fla. Nov.22, 2006) ("Even a single affidavit or consent to join submitted by another individual stating that they are similarly situated and wish to join the suit is enough to bring the Plaintiff's contentions above pure speculation.")).

As a last attempt against conditional certification, TBC argues that many potential opt-ins are automatically excluded from the class due to arbitration agreements, and that conditional certification is inappropriate because the claim requires individualized, fact-intensive inquiry for each plaintiff and putative class member.[6]   Doc. 28 at 14-18.   TBC made the same arguments in a very similar case in the district court in South Carolina, Charleston Division, in which TBC was a defendant.[7]   *Gordon v. TBC Retail Grp., Inc.*, --- F. Supp. 3d --- No. 2:14-cv-03365-DCN, 2015 WL 5770521 (D.S.C. Sept. 30, 2015).   In *Gordon*, similar to here, TBC argued that that there are many, if not most, potential class members that are excluded from the class, due to the fact that "[TBC's] employees started to sign

---

[6] Defendant has filed a Motion to Compel Arbitration, only with respect to Plaintiff Corey Desimoni and opt-in Plaintiff Louis Rodriguez.   Doc. 19.   Defendant's Motion to Compel Arbitration was referred to the undersigned and is scheduled for an evidentiary hearing on May 11, 2016.   *See* Docs. 36, 41.

[7] In *Gordon*, the defendant was TBC Retail Group, Inc.   In its response to the instant motion, TBC states that both Plaintiffs were employed by TBC Retail Group, Inc.   Doc. 28-2 at 1.

mandatory arbitration agreements in October 2013." 2015 WL 5770521, at *9 n.9; Docs. 28 at 14-15; 19 at 2. The *Gordon* court declined to entertain the argument, finding that "it prematurely assumes that such arbitration agreements are enforceable." 2015 WL 5770521, at *9 n.9. The *Gordon* court found that it was a "better approach . . . to address arbitration issues after conditional certification, when the scope and substance of those issues becomes clearer. *Id.* (citing *Amrhein v. Regency Mgmt. Servs.*, LLC, 2014 WL 1155356, at *10 (D. Md. Mar. 20, 2014) ("[T]his [c]ourt cannot determine at this stage of the proceeding what potential opt-in plaintiffs, if any, would be subject to valid and binding arbitration. Thus, the potential for arbitration will not forestall the [p]laintiffs' entitlement to conditional certification.")). The Court is persuaded by this rationale and finds that the existence of an arbitration agreement that may or may not be enforceable against some putative plaintiffs should not forestall conditional certification in this case. *See also* *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003) (refusing to address defendant's argument about the effect of its recently implemented arbitration policies and newly signed arbitration agreements, holding, "[m]ost, if not all of these objections, go to the merits of the action or the forum in which these claims ultimately should be resolved, not whether notice to potential claimants should be given.").

As for TBC's remaining argument [8] that conditional certification is inappropriate because the claim requires individualized, fact-intensive inquiry for

_____

[8] TBC raised additional arguments that concern the propriety of deciding a motion for conditional certification before determining the merits of TBC's Motion to Dismiss and

each plaintiff and putative class member, TBC relies on its section 7(i) exemption defense. Doc. 28 at 15. TBC claims that in determining whether the exemption applies, an individual's own specific circumstances must be examined. *Id.* TBC also asserts that "decertification of any conditional class is inevitable." Doc. 28 at 18. First, the Court finds that it is premature to make any determination on the individualized nature of putative Plaintiffs' claims at the notice stage. Such issues are best reserved after completion of discovery in a motion for decertification. *See Hipp*, 252 F.3d at 1218. Moreover, as the *Gordon* court correctly noted,

> adopting an interpretation of the "similarly situated" standard that could be defeated any time defendants offered a § 7(i) defense would effectively deny the benefits of the FLSA collective action provisions to all employees being paid pursuant to a purported "commission" plan. This result appears inconsistent with the remedial goals of the FLSA.

*Gordon,* 2015 WL 5770521, at *6. Ultimately, the Court, finds that Plaintiffs have sufficiently met their burden in showing that there are other similarly situated employees. Accordingly, the Court turns to the content and dissemination of the class notice. *See Hipp*, 252 F. 3d at 1218.

### C. Content and dissemination of the proposed class notice

Court-authorized notice in class actions can help prevent "misleading communications, and "ensure that [the notice] is timely, accurate, and informative." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172, (1989). The Supreme Court has declined to determine the form or contents of the court-approved notice and

---

Motion for Summary Judgment that were pending before the Court. Doc. 28 at 1‑10. Because the district judge recently has ruled on the dispositive motions, these arguments are moot for purposes of this Report and Recommendation. *See Docs.* 42, 43.

instead has delegated these tasks to the district court's broad discretion.   *Id.* at 171 ("Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of the district court to begin its involvement early, and at the point of the initial notice, rather than at some later time.").

TBC raises several objections to the proposed notice, some of which warrant discussion.[9]   First, TBC argues that Plaintiffs should not be permitted to send a "reminder" notice.   The Court agrees.   "Reminder notices are unnecessary because they are redundant and could be interpreted as encouragement by the Court to join the lawsuit*."   Smith v. Cable Wiring Specialist, Inc.*, No. 2:14-cv-277-FtM-29, 2014 WL 4795160, at *3 (M.D. Fla. Sept. 25, 2014).

TBC next takes issue with the identity of the employer in the proposed Notice and argues that "[b]oth Plaintiffs were employed by TBC Retail Group, Inc.   None of the other listed entities employed any named Plaintiff.[10]   Notice should not be sent to any entities that are not proper Defendants."   Doc. 28-2 at 1, [SM1].   Here, the Court disagrees.   The paystubs submitted by Plaintiffs include "TBC Corporation"

---

[9] TBC filed a response totaling nineteen (19) pages.   TBC then raised all of its Notice objections in a redlined version of the proposed Notice, attached as an exhibit to its reply. Doc. 28-2.   The local rules provide that a reply memorandum shall not exceed twenty (20) pages.   M.D. Fla. R. 3.01(g).   The way TBC addressed its Notice objections is not a proper way to address arguments in court, and the Court will not be inclined to consider arguments raised in a similar fashion in future pleadings, particularly if they exceed the total page limitations.

[10] Plaintiffs' Notice includes "All persons currently or formerly employed by TBC Corporation (doing business as (d/b/a) "TBC Retail Group." "TBC Brands," "Tire Kingdom," "Speedy Oil," "Midas," "Merchants Tire and Auto Centers," "National Tire Warehouse," "NTB," "Big O' Tires," "Caroll Tire Company," and/or "Treadways").   Doc. 10-1 at 1.

as the employer.  *See* Docs. 10-8, 10-9, 10-10, 10-11, 10-12, 10-13.  The declaration of Defendant's vice president of human resources states that she is "the Vice President of Human Resources for TBC Corporation's retail and franchise brands, including TBC Retail Group, Inc."  Doc. 28-1.  The TBC Corporation Associate Handbook included in Plaintiffs' exhibits states that TBC Retail Group operates over 800 corporate owned stores under the Tire Kingdom, Merchant's Tire and Auto Centers, NTB and Big O Tires brands, and further lists the other brands in Plaintiffs' proposed Notice as operated under by "TBC Wholesale."  Doc. 10-5.  The Court, therefore, finds that in order for the Notice to reach all potential plaintiffs, it is appropriate to include the entities listed, as they are supported by the evidence in the record.

TBC next argues that anyone who began working for TBC after October 2013 should not receive the Notice because starting from this date "all new employees were required to sign a Mutual Arbitration Agreement," and this arbitration agreement has already been enforced in another case.  Doc. 28-2 at 1, [SM3] (citing *Czopek v. TBC Retail Grp., Inc.*, No. 8:14-cv-675-T-36TBM, 2014 WL 5782794 (M.D. Fla. Nov. 6, 2014)).  In *Czopek*, the court enforced an arbitration agreement against two opt-in plaintiffs; however, in doing so, it stated "[h]ere, Plaintiffs have made no argument that Florida law supports the renovation of this Arbitration Agreement[, or] . . . that the issues presented by this case are not arbitrable under the Agreement."  *Id.* at *5.  Subsequently, in its order conditionally certifying the class, the *Czopek* court held, "any class must exclude employees who have signed such [arbitration] agreements."

*Czopek v. TBC Retail Grp., Inc.*, No. 8:14-cv-675-T-36TBM, 2015 WL 4716230, at *7 (M.D. Fla. Aug. 7, 2015). This Court has yet to rule on this issue and, as noted, Defendant's Motion to Compel Arbitration, which Plaintiffs oppose, is pending before this Court and is scheduled for an evidentiary hearing. *See* Docs. 19, 27, 36, 41. The Court, therefore, cannot recommend excluding anyone from the class that signed an arbitration agreement without first considering the validity of the arbitration agreement. Similar to Defendant's argument on the individualized nature of putative Plaintiffs' claims at the notice stage, this issue also is best reserved in a motion for decertification after completion of discovery. *See Hipp*, 252 F.3d at 1218.

TBC next asserts that it does not employ any "technicians" and takes issue with the proposed Notice's inclusion of those who worked as "mechanic/technicians." Doc. 28-2 at 1, [SM3]. While Plaintiffs' own exhibit would appear to support this argument, the Court does not recommend limiting the Notice to those who worked as "mechanics." *See* Doc. 10-4 (listing the job description for "Mechanic"). Throughout their Complaint, Plaintiffs refer to their positions as "mechanics/technicians." *See e.g.*, Doc. 1 ¶¶ 2, 5, 6, 7, 8, 10, 11, 29-33. Each of the opt-in Plaintiffs also described his job position as "mechanic/technician." Docs. 3-1, 13-1, 35-1. Thus, while the job title in the job description may be "mechanic," it appears that those employees were referred to as "mechanic/technicians" and that is what they understood their positions to be.

TBC next takes issue with the description of the lawsuit, specifically that "Plaintiffs are seeking payment of all unpaid overtime compensation for the period

July 2012 to the present, an additional amount of liquidated damages as well as payment of their attorneys' fees and costs *as required* by § 16(b) of the FLSA." Doc. 28-2 at 2, [SM5] (emphasis added).   TBC argues that the "[p]ayment of Plaintiffs' attorneys' fees and costs is not 'required'" if, for example, Plaintiffs do not prevail, and suggests that "required" be replaced with "permitted."   The Court agrees.   The Notice should indicate that the "requirement" is a precondition to Plaintiffs' prevailing on their claims.

TBC next argues that its "position should be stated more broadly than in Plaintiffs' proposed notice," and it should not be relegated to a single sentence.   Doc. 28-2 at 3, [SM6].   Moreover, it requests that its position be stated in a separate paragraph.   The Court finds this to be a valid argument.   Moreover, the Supreme Court has cautioned that "courts must be scrupulous to respect judicial neutrality; to that end, trial courts must take care to avoid even appearance of judicial endorsement of merits of action."   *Hoffman La-Roche, Inc.*, 493 U.S. at 174.   The Notice, therefore, should be amended accordingly.

TBC next takes issue with the following sentence from the proposed Notice: "The court has not yet determined whether the Defendant's alleged arbitration plan is enforceable as to any of the Mechanic/Technicians who may have claims similar to the Plaintiffs in this case."   Doc. 28-2 at 3, [SM7].   TBC asserts that the Middle District of Florida enforced this same arbitration agreement in *Czopek*, 2014 WL 5782794.   While the *Czopek* court upheld an arbitration agreement under the circumstances of that case, such holding is not binding on this Court.   This Court

has yet to rule on Defendant's pending Motion to Compel Arbitration.    TBC also seeks to strike the following sentence as immaterial:    "If the Defendant later alleges that your particular claims are subject to individual arbitration, you still have all of the substantive rights afforded by the FLSA as well as the right to demand a jury trial under the Federal Arbitration Act (FAA). 9 U.S.C. § 4." Doc. 28-2 at 3, [SM8]. The Court agrees, and the Notice should be amended accordingly.

TBC next argues, "Plaintiffs' proposed statement of eligibility in . . . Section 3 conflicts with their own statement, in the first paragraph of the proposed [N]otice, describing the group to whom they request notice be sent." Doc. 28-2 at 3, [SM9]. Section 3 states:    "You are eligible to join this lawsuit if you worked for Defendant in Florida as a Mechanic/Technician between July 2012 and the present and you worked overtime hours (more than forty hours per week) for which you were not properly compensated." Doc. 10-1 at 2.    In paragraph one, the proposed Notice is addressed to "all persons currently or formerly employed by TBC Corporation . . . within the state of Florida: (1) who worked for the company as mechanic/technicians at any time beginning July 2012 to the present; (2) who were paid pursuant to Defendant's 'Commission Pay Plan;' (3) who worked more than forty (40) hours in one or more weeks of their employment; and (4) who did not receive overtime (time and one-half their regular rate) for all hours worked over forty (40) hours." Id. at 1.    The Court agrees with TBC's argument, and Section 3 should be amended accordingly. Moreover, the phrase "for which you were not properly compensated" implies that "the use of such language could be interpreted by putative class members as

suggesting that the Court has taken a favorable view of the merits of Plaintiff's case," and thus is inappropriate.   *See Smith,* 2014 WL 4795160, at *3.

TBC also seeks to remove the first paragraph of Section 4 of the proposed Notice, which is nearly a repeat of the preceding section, as redundant.   Doc. 28-2 at 3, [SM10].   Here, the Court also agrees.   Accordingly, this paragraph should be removed.

Next, Defendant argues that the proposed Notice should not indicate that if there is no judgment in Plaintiffs' favor, the opt-in Plaintiffs will not be responsible for "any party's attorney's fees."   Doc. 28-2 at 3, [SM12].   TBC argues that there are circumstances under which plaintiffs in an FLSA case may be required to pay the defendant's attorney's fees.   *Id.*   In *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1437 (11th Cir. 1998), the Eleventh Circuit addressed the issue of the award of attorney's fees to a prevailing defendant in an ADEA case.   The ADEA incorporates the attorney's fees provisions of the FLSA.   *Id.*   The court noted,

> [a]lthough the attorney's fees provision of the FLSA does not address whether, or under what circumstances, attorney's fees should be awarded to a prevailing defendant, see 29 U.S.C. § 216(b), this court has held that the FLSA entitles a prevailing defendant to attorney's fees only where the district court finds that the plaintiff litigated in bad faith.

*Id.*   *See also See Plummer v. PJCF, LLC,* No. 2:15-cv-37-FtM-38, 2015 WL 2019380, at *5 (M.D. Fla. Apr. 30, 2015), granted on reconsideration in part, No. 2:15-cv-37-FtM-38CM, 2015 WL 2359996 (M.D. Fla. May 18, 2015).   Accordingly, the Notice should be amended to inform potential plaintiffs that they may be responsible for Defendant's attorney's fees.   The Notice also should advise potential plaintiffs that

they may be responsible for defense costs if they are unsuccessful.   *See Smith,* 2014 WL 4795160, at *3.

One other issue remains that was not raised by the parties.   Plaintiffs seek to send the Notice to mechanics employed between July 2012 (three years preceding the filing date of the Complaint) to present.   Willful FLSA violations are subject to a three-year statute of limitations.   29 U.S.C. § 255(a).   The Complaint alleges that TBC willfully violated the FLSA.   Doc. 1 ¶ 73.   "If the plaintiff is a named party in the complaint, a FLSA action is deemed commenced upon the filing of the complaint; if the plaintiff is not named in the complaint, the action is deemed commenced upon the filing of a written consent to join the action."   *Love v. Phillips Oil, Inc.,* No. 3:08cv92/MCR/MD, 2008 WL 5157677, at *1 (N.D. Fla. Dec. 9, 2008).   Thus, a mechanic should be able to file a consent to join this lawsuit in order to pursue a claim for an FLSA violation that occurred within three years prior to the filing of his or her consent to join.   *See Abdul-Rasheed v. KableLink Comm., LLC,* No. 8:13-cv-879-T-24, 2013 WL 5954785, at *3 (M.D. Fla. Nov. 7, 2013).   The Court should allow notice to be sent to mechanics that worked for Defendant in Florida within the last three years prior to the date the Notice is mailed.   *Id.; see also Gutescu v. Carey International, Inc.,* 2003 WL 25586749, at *17–18 (S.D. Fla. July 21, 2003) (concluding that the notice should reflect a three-year period from the date that the notice was sent, not from the date that the complaint was filed).

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.      Plaintiffs' Motion for Conditional Certification and Facilitation of Court-Authorized Notice Pursuant to 29 U.S.C. § 216 & Supporting Memorandum of Law (Doc. 10) be **GRANTED in part**.   The Court recommends conditionally certifying a class of current and former mechanic/technicians who: (a) worked for Defendant within the state of Florida within the three (3) years preceding the date of the Notice; and (b) worked more than forty (40) hours per week and were paid using a "Commission Pay Plan," but who did not receive any overtime compensation in weeks when they worked more than forty (40) hours.

2.      Plaintiffs submit an amended proposed Notice consistent with this Report and Recommendation for the Court's consideration and approval.

3.      Defendant produce, in an electronic readable format to Plaintiffs' counsel, a list containing the full names, job titles, last known addresses, personal e-mail addresses, telephone numbers, dates of birth, and dates of employment for all putative class members who worked as mechanics for Defendant between three years preceding the date of the order ruling on the Motion for Certification until present.

4.      Defendant refrain from contact with any individual disclosed as a putative class member for reasons related to this litigation until after such individual's Consent to Join has been filed.

**DONE** and **RECOMMENDED** in Fort Myers, Florida on this 25th day of

April, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record