## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is made by and between Corey Desimoni ("Desimoni") on behalf of the "Plaintiffs" as defined below, James Reiter ("Reiter") on behalf of the Plaintiffs, Desimoni in his individual capacity, Reiter in his individual capacity, and TBC Corporation ("TBC"). Desimoni on behalf of the Plaintiffs, Reiter on behalf of the Plaintiffs, Desimoni in his individual capacity, Reiter in his individual capacity, and TBC Corporation ("TBC") are sometimes referred to herein collectively as the "Parties," or individually as a "Party."

WHEREAS, Desimoni and Reiter filed a collective action lawsuit against TBC, in the United States District Court, Middle District of Florida, Fort Myers Division, styled *Corey Desimoni & James Reiter, individually and on behalf of all similarly situated, Plaintiffs v. TBC Corporation, Defendant*, Case No. 2:15-cv-00366-UA-CM, (the "Lawsuit");

WHEREAS, the Lawsuit was conditionally certified as a collective action under the Fair Labor Standards Act;

WHEREAS, the time for opting in to the Lawsuit has now expired;

WHEREAS, 174 individuals (the "Opt-ins") filed notices of consent to join the Lawsuit, in which they each authorized Desimoni and Reiter to make decisions on his or her behalf, including negotiating a resolution of his or her claims, and agreed to be represented by attorneys Bernard Mazaheri and Christina Thomas, of Morgan & Morgan, P.A.;

WHEREAS, on April 18, 2017 the Court where the Lawsuit is pending entered an Order, Doc. 164, providing that Desimoni and 153 of the Opt-ins must pursue their claims in arbitration, on an individual basis, and staying the Lawsuit as to those 154 individuals;

WHEREAS, Reiter and the 21 Opt-ins who were not ordered to pursue their claims in arbitration remain parties to the Lawsuit, whose claims have not been stayed;

WHEREAS 2 of the Opt-ins, Rex Earls ("Earls") and James Bargeron ("Bargeron"), have withdrawn their notices of consent to join and wish to be dismissed from the Lawsuit;

WHEREAS, the Plaintiffs, or others who may claim by or through one or more of the Plaintiffs, may have or make other claims, causes of action, rights, charges, grievances, demands or suits in law or equity against TBC, or against persons or entities related to TBC;

WHEREAS, TBC denies that it ever employed the Plaintiffs or any of them, and denies any and all liability for any claims or causes of action which Plaintiffs or any of them or others who may claim through them may have or claim;

WHEREAS, the Plaintiffs and TBC desire to settle all claims asserted in the Lawsuit and in arbitration, in order to avoid the continued cost and distraction of litigation; and

1

WHEREAS, on June 27, 2017, the Parties began mediation with the Honorable John Roach, who was a former Kentucky Supreme Court Justice and an attorney with experience in collective/class action overtime litigation, and spent 18.1 hours on the case at hand, to finally reach a resolution in principle on July 12, 2017; without the assistance and persistence of the Hon. John Roach the Parties would not have reached a resolution;

NOW, THEREFORE, in exchange for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the Parties agree as follows:

## ADDITIONAL DEFINITIONS

A.    "Released Parties" shall mean the following persons and entities, individually, collectively, and in any combination:

(1)    TBC Corporation, TBC Retail Group, Inc., and all of their past, present and future parents, subsidiaries, members, affiliates, and divisions;

(2)    All of the predecessors, successors and assigns of the entities listed in Subsection (A)(1);

(3)    All of the past, present and future employees, officers, directors, managers, supervisors, agents, shareholders, owners, servants, partners, independent contractors, accountants, insurers, benefits plans, third party administrators, attorneys and representatives of the entities listed in Subsections (A)(1) and (A)(2); and

(4)    The heirs, assigns, trustees, successors, agents and representatives of all entities or persons listed in Subsections (A)(1), (A)(2) and (A)(3).

B.    "Plaintiffs" shall mean all Parties to the Lawsuit other than TBC Corporation, including Desimoni, Reiter and all opt-ins, and including those as to whom the Lawsuit has been stayed. "Plaintiff" shall mean one of the Plaintiffs.

C.    "Claimants" shall mean Desimoni, Reiter, all Plaintiffs, and all of their successors, heirs and assigns and all others who may claim by or through or on behalf of any of them.

## COVENANTS

In consideration for the Parties entering into this Agreement and their fulfillment of their promises herein, including (but not limited to) the promises entered into by Desimoni and Reiter in their representative capacity on behalf of each of the Plaintiffs, the Parties, and Desimoni and Reiter on behalf of all Plaintiffs, agree to the following:

1.      TBC (or a related entity on behalf of TBC) shall pay the total sum of $250,000.00 pursuant to this Agreement (the "Payment").  The Payment shall be made by issuance of:  (a) a single check to Morgan & Morgan, P.A., in the amount of $120,216.22 for attorneys' fees and costs; and (b) checks to Plaintiffs in the amounts listed in Exhibit A (pages 12 through 16, below), amounting to a total of $129,783.78, as wages.

2.      Desimoni on his own behalf and on behalf of all Claimants, and Reiter on his own behalf and on behalf of all Claimants:

(a)      Hereby fully, finally and forever release and discharge the Released Parties from any and all liabilities, charges, claims, demands, actions, causes of action, and suits, for wages, other compensation, liquidated damages, attorneys' fees, costs, and for any other relief whatsoever, alleged to be due or owed on account of employment or services rendered, including claims under the Fair Labor Standards Act ("FLSA"), Florida's wage statutes (Fla. Stat. §§ 448.01-448.110), Florida's Constitution, and any other local, state or federal law, statute, rule, regulation or ordinance relating to payment of wages or other compensation for employment or services rendered, whether known or unknown, fixed or contingent, which they or any of them had, has or may have against the Released Parties or any of the Released Parties, from the beginning of the world to the date of this Agreement;

(b)      Covenant and agree not to file any lawsuit or bring any other legal action or make any claim or demand based upon any liability, charge, claim, demand, action, cause of action or suit described in Section 2(a) of this Agreement, except an action to enforce the terms of this Agreement; and

(c)      Agree and affirm that they are not relying on any representation made by the Released Parties, by the Released Parties' counsel, or by any person or entity related to the Released Parties, concerning any matters not expressly set forth in this Agreement, or concerning whether or not any payment provided for in this Agreement is taxable as wages, as income, or otherwise, or concerning the amount of taxes that he or she may be required to pay as a result of the Payment.

3.      The Parties shall file a stipulated motion with the Court where the Lawsuit is pending, asking the Court to lift the stay on litigation imposed by the Court for the limited purposes of:  (i) dismissing the claims of Earls and Bargeron; and (ii) addressing the Parties' motion to approve this Agreement and, if the Court approves this Agreement, dismissing the Lawsuit with prejudice in accordance with the terms of this Agreement.

4.      This Agreement is contingent upon approval of this Agreement without material modification, and dismissal of the Lawsuit and all claims raised therein.

(a)      If the Agreement is approved without material modification and the Lawsuit is dismissed in its entirety, then the Parties will proceed to implement this Agreement.

3

(b)     If, for any reason, any of the contingencies stated above in this Section 4 are not met, then the Parties shall not implement this Agreement, but instead shall negotiate in good faith efforts to reach agreement on the terms of a modified settlement agreement for submission to the Court for approval; provided, however, that a refusal by Desimoni and Reiter in their representative capacity to agree to reduce the Payment, or a refusal by TBC to agree to increase the Payment, shall not constitute a failure to negotiate in good faith.  If the Parties proffer a modified agreement to the Court pursuant to the prior sentence and the Court approves the modified agreement, then the Parties will proceed to implement the modified agreement.

(c)     If after good faith efforts as described in Subsection 4(b) of this Agreement, the Parties are unable to reach agreement on the terms of a modified settlement agreement for submission to the Court for approval, or if the Parties proffer a modified settlement agreement to the Court and the Court denies the Parties' motion to approve the modified agreement or approves the modified Agreement but with one or more material modifications, then this Agreement (and any such modified agreement) shall be null and void, *ab initio*.

5.     The payment described in Subsection 1(a) shall be classified as non-wage income, and IRS Forms 1099 shall be issued reflecting that payment.  The payments described in Subsection 1(b) shall be classified as wages, subject to and reduced by all applicable deductions and subject to employer obligations concerning payment of the employer's share of payroll taxes and the like, and IRS Forms W-2 shall be issued to the Plaintiffs reflecting those payments.  Tax deductions from the payments described in Subsection 1(b) shall be based on W-4 Forms currently available to TBC.  As a condition precedent to payment of the amount described in Subsection 1(a), Morgan & Morgan, P.A. is required to provide a W-9 Form to Shane Muñoz, FordHarrison, LLP, 101 East Kennedy Boulevard, Suite 900, Tampa, FL, 33602.

6.     Each recipient of a payment shall be responsible for payment of any and all taxes that may remain due after TBC has made deductions as provided above on account of any payment made pursuant to this Agreement.

7.     Payments shall be made by delivery of checks to the Hon. John Roach, Ransdell, Roach & Royse, PLLC, 176 Pasadena Drive, Building One, Lexington, Kentucky 40503.  Except as provided below, the checks described in Section 1 shall be delivered on or before August 7, 2017.  To the best of TBC's knowledge, TBC Retail Group, Inc. has W-4 Forms for all Plaintiffs.  To the extent TBC Retail Group, Inc. is unable to locate a W-4 Form for an individual listed in Exhibit A, TBC shall promptly inform Morgan & Morgan, P.A. that a W-4 Form is not available.  Notwithstanding anything to the contrary elsewhere in this Agreement, payment to any individual for whom TBC so informs Morgan & Morgan P.A. shall be timely if delivered to Mr. Roach within 14 calendar days after receipt by Mr. Muñoz from Morgan & Morgan of a Form W-4 for that individual.  Delivery of any check shall be complete upon receipt by the Hon. John Roach, or one day after deposit in the U.S. Mail for overnight delivery, or sending by FedEx of UPS for overnight delivery.

8.     The Hon. John Roach shall hold the full amount of the Payment in escrow.  If the contingencies in Section 4 of this Agreement are met, such that the Parties become obligated to implement this Agreement, then Mr. Roach shall promptly release the Payment to Morgan &

4

Morgan, P.A. If this Agreement becomes null and void pursuant to Subsection 4(c), then Mr. Roach shall promptly release the Payment to counsel for TBC, Mr. Muñoz. If the Payment is released to Morgan & Morgan, P.A., then Morgan & Morgan, P.A. shall promptly disburse the individual checks to the persons listed in Exhibit A. If the Payment is released to Mr. Muñoz, then Mr. Muñoz shall promptly return the Payment to TBC, which may then cancel the checks and retain the Payment.

9.     TBC may cancel any checks that remain uncashed 180 days after release by the Honorable John Roach to Morgan & Morgan, P.A., and after a commercially reasonable time following such cancellation shall issue one check to **Shriner's Hospitals for Children** in an amount equal to the combined gross amounts of the cancelled checks to this *cy pres* recipient.

10.     After having conferred with legal counsel of their choice, Desimoni on his own behalf and on behalf of all Claimants, and Reiter on his own behalf and on behalf of all Claimants agree and acknowledge that, upon payment in accordance with this Agreement, each Plaintiff will have been paid all amounts due on account of all hours worked for the Released Parties, and will have been paid all wages and all other compensation due, including any overtime pay to which she or he may have been entitled on account of services provided to the Released Parties through the date of the execution of this Agreement

11.     As soon as the Court approves this Agreement or a modified agreement proffered to the Court pursuant to Subsection 4(b) of this Agreement, Counsel for the Parties shall promptly:

(a)     Execute and file a stipulation for dismissal with prejudice, using the form attached to this Agreement, and the Parties agree to do anything else necessary to effect the dismissal with prejudice of all claims, with each Party and each Plaintiff to bear his, her or its own attorneys' fees and costs, except as expressly provided in this Agreement, and except as expressly provided in this Agreement, TBC shall have no liability for any Plaintiff's costs, litigation expenses, expert witness fees, or attorneys' fees, no matter how accrued or accruing, arising from or relating to the Lawsuit, any pending arbitration, or to National Labor Relations Board ("NLRB") Case Nos. 12-CA-157478 and 12-CA-170543 (both NLRB cases referred to hereafter, collectively, as the "Charge").

(b)     Send a joint letter to the American Arbitration Association ("AAA"), notifying the AAA that TBC and each of the 153 Plaintiffs who filed demands for arbitration have reached a negotiated resolution of the claims in arbitration, and that those 153 are therefore withdrawing their demands for arbitration.

(c)     Send a joint letter to the National Labor Relations Board ("NLRB"), notifying the NLRB that Plaintiff Rodriguez and TBC have reached a negotiated resolution of the claims made by Rodriguez in the Charge and that Rodriguez no longer wishes to pursue the Charge.

12.     TBC has consistently maintained and continues to maintain that all of its pay practices are and were lawful, and were adopted and implemented in good faith.  TBC denies that it has acted wrongfully toward Desimoni, Reiter or any other Plaintiff, and the execution of this Agreement does not constitute an admission by any of the Released Parties that they have violated any law, statute, rule, regulation or ordinance of the United States, the State of Florida, any other state, or any county or municipality, or that they have breached any of their policies or practices, or that the claims made by Plaintiffs are meritorious.  Further, TBC has maintained at all times and continues to maintain that its Mutual Agreement to Arbitrate is valid and enforceable in all respects, and the execution of this Agreement does not constitute a concession or admission by TBC to the contrary.

13.     By accepting the payments listed in Exhibit A attached hereto, Desimoni and Reiter agree that each of them shall defend and fully indemnify and forever hold the Released Parties harmless from and against any and all actions, causes of action, claims or demands that may be brought against Released Parties, by anyone to whom either Desimoni or Reiter has assigned, sold, subrogated, transferred, conveyed or pledged as security any such actions, causes of action, claims or demands which could have arisen from the claims alleged in the Lawsuit, whether such are asserted by third-party complaint, cross-claim or otherwise, or whether such are asserted for indemnity, contribution or otherwise. Likewise, by accepting the payments listed in Exhibit A attached hereto, each Opt-In Plaintiff agrees that he or she will defend and fully indemnify and forever hold the Released Parties harmless from and against any and all actions, causes of action, claims or demands that may be brought against them, by anyone to whom the Opt-In Plaintiff has assigned, sold, subrogated, transferred, conveyed or pledged as security any such actions, causes of action, claims or demands which could have arisen from the claims alleged in the Lawsuit, whether such are asserted by third-party complaint, cross-claim or otherwise, or whether such are asserted for indemnity, contribution or otherwise. Desimoni and Reiter, through their counsel, shall inform each Opt-in Plaintiff of the provisions of this paragraph in writing along with delivery of the settlement sums payable under this Agreement.

14.     If, at any time after the execution of this Agreement, it is established that any Party or any Plaintiff has violated its terms, any person or entity asserting a right to enforce the terms of this Agreement shall have the right to seek appropriate relief, including, but not limited to, an injunction restraining further violations as well as attorneys' fees and costs.

15.     Desimoni on his own behalf and on behalf of all Plaintiffs, and Reiter on his own behalf and on behalf of all Plaintiffs, acknowledge and agree that:

(a)     The only consideration for each of them entering into this Agreement is that which is stated herein, and there are no promises or agreements of any other kind which have caused any of them to execute this Agreement;

(b)     None of them have relied on statements or representations by the Released Parties, their agents or representatives, concerning the matters addressed in this Agreement;

6

(c)     Desimoni and Reiter on each of their behalf, has carefully read and fully understands the provisions, meaning and intent of this Agreement, including but not limited to its release and waiver of specified claims and its final and binding effect;

(d)     All terms of this Agreement are contractual and not mere recitals;

(e)     Desimoni and Reiter on each of their behalf, have been given a reasonable time to consider this Agreement;

(f)     Each of them has had the benefit of consulting with an attorney of his or her choice before executing this Agreement, either directly or through Desimoni and Reiter after designating Desimoni and Reiter as his or her representatives for purposes of this Agreement;

(g)     None of them is waiving any rights or claims that may arise after the Effective Date of this Agreement;

(h)     The consideration given to each of them by TBC in this Agreement includes consideration in addition to anything of value to which he or she is entitled in the absence of this Agreement; and

(i)     He or she knowingly and voluntarily enters into this Agreement.

16.     This Agreement, or any modified agreement proffered to the Court pursuant to Subsection 4(b) of this Agreement, shall become effective upon, and not until, the date when the Court approves said agreement (the "Effective Date").

17.     This Agreement may be executed in multiple counterparts, each of which shall be deemed to constitute an original.

18.     This Agreement and all terms thereof shall be construed and governed according to the laws of Florida.

19.     The waiver by any Party of a claim based on a breach of any provision of this Agreement shall not operate or be construed as a waiver of any claims based on any subsequent breach of that or any other provision.

20.     The rights and obligations of the Plaintiffs and the Released Parties under this Agreement shall inure to the benefit of and shall be binding upon their respective successors and assigns.

WSACTIVELLP:9278783.1

21.     Desimoni on his own behalf and on behalf of all Claimants, and Reiter on his own behalf and on behalf of all Claimants, agree, confirm and warrant that there exist no other agreements, oral or written, between any Plaintiff and any of the Released Parties, and relating to any matters covered by this Agreement, and further agree that this Agreement supersedes any and all prior or contemporaneous agreements, written or verbal, and any other understandings that exist or may have existed between any Plaintiff and any of the Released Parties, and related to the same subject matter as described herein.

22.     This Agreement may not be altered, amended, modified, or terminated except as expressly provided herein, or by an instrument in writing, executed by the person or entity against whom enforcement is sought, or where enforcement is sought against a Plaintiff, executed by that Plaintiff or by Desimoni or Reiter.

23.     The Parties agree that the Plaintiffs are not waiving any claims or rights that cannot be waived under applicable law.

24.     If, after the Court approves this Agreement or a modified agreement proffered to the Court in accordance with Subsection 4(b) of this Agreement, any provision in said agreement is held to be invalid, illegal or unenforceable, either legislatively or judicially, such provision will be severed from said agreement, and the remainder of said agreement will continue to be valid and enforceable. However, if the release, waiver or covenant not to sue given by one or more Plaintiffs is found to be invalid, illegal or unenforceable, then each such Plaintiff shall promptly return to TBC any and all amounts paid to that Plaintiff pursuant to said agreement, together with his or her pro rata share of the amount paid to Morgan & Morgan, P.A. pursuant to Subsection 1(a) of this Agreement.

25.     THE UNDERSIGNED STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND KNOW AND UNDERSTAND ITS CONTENTS, AND THAT THEY EXECUTED THIS AGREEMENT AS THEIR FREE ACT AND DEED.


THIS SPACE
INTENTIONALLY
LEFT BLANK

SIGNATURES
APPEAR ON
FOLLOWING PAGES

8

BY SIGNING BELOW, THE PARTIES CONFIRM THEIR INTENT TO BE BOUND BY ALL TERMS OF THIS AGREEMENT.

_____
Corey Desimoni, in his individual capacity

Date: _8/15/17_____

STATE OF ~~FLORIDA~~ _Colorado_ )
                                        )
COUNTY OF _Boulder_    )

BEFORE ME, the undersigned authority personally appeared Corey Desimoni, by me known or who produced valid identification as described below, who executed the foregoing Release and Settlement Agreement (the "Agreement") and acknowledged before me that he subscribed to this Agreement on this _15th_ day of _August_, 2017.

_____
NOTARY PUBLIC
My Commission Expires: _June 28, 2021_

___ Personally known to me

_✓_ Produced identification

```
MARQUIS JOHNSON
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174027173
MY COMMISSION EXPIRES JUNE 28, 2021
```

_____
Corey Desimoni, in his capacity as representative of the Plaintiffs, as defined above

Date: _8/15/17_____

STATE OF ~~FLORIDA~~ _Colorado_ )
                                        )
COUNTY OF _Boulder_    )

BEFORE ME, the undersigned authority personally appeared Corey Desimoni, by me known or who produced valid identification as described below, who executed the foregoing Release and Settlement Agreement (the "Agreement") and acknowledged before me that he subscribed to this Agreement on behalf of the Plaintiffs as defined above, on this _15th_ day of _August_, 2017.

_____
NOTARY PUBLIC
My Commission Expires: _June 28, 2021_

___ Personally known to me

_✓_ Produced identification

```
MARQUIS JOHNSON
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174027173
MY COMMISSION EXPIRES JUNE 28, 2021
```

9

_____
James Reiter, in his individual capacity

Date: __8/15/17_____

STATE OF FLORIDA          )
                          )
COUNTY OF __lee_____     )

     BEFORE ME, the undersigned authority personally appeared James Reiter, by me known or who produced valid identification as described below, who executed the foregoing Release and Settlement Agreement (the "Agreement") and acknowledged before me that he subscribed to this Agreement on this __ day of __August__, 2017.

_____          _____ Personally known to me
NOTARY PUBLIC
My Commission Expires: _____          ✓ Produced identification
                                           FL DL LIC# R360-442-48-337-0

> ANGELA PIPER
> MY COMMISSION # FF 200115
> EXPIRES: April 17, 2019
> Bonded Thru Notary Public Underwriters

_____
James Reiter, in his capacity as representative of the Plaintiffs, as defined above

Date: __8/15/17_____

STATE OF FLORIDA          )
                          )
COUNTY OF __lee_____     )

     BEFORE ME, the undersigned authority personally appeared James Reiter, by me known or who produced valid identification as described below, who executed the foregoing Release and Settlement Agreement (the "Agreement") and acknowledged before me that he subscribed to this Agreement on behalf of the Plaintiffs as defined above, on this __ day of __August__, 2017.

_____          _____ Personally known to me
NOTARY PUBLIC
My Commission Expires: _____          ✓ Produced identification
                                           FL DL LIC# R360-442-48-337-0

> ANGELA PIPER
> MY COMMISSION # FF 200115
> EXPIRES: April 17, 2019
> Bonded Thru Notary Public Underwriters

10

WSACTIVELLP:9278783.1

TBC Corporation

By: _____

Its: _____ S V P & General Counsel

Date: _____ 8/15/17

STATE OF FLORIDA          )
                          )
COUNTY OF PALM BEACH      )

BEFORE ME, the undersigned authority personally appeared Brian Maciak, SVP & General Counsel for TBC Corporation, by me known or who produced valid identification as described below, who executed the foregoing Release and Settlement Agreement (the "Agreement") and acknowledged before me that he subscribed to this Agreement on behalf of the TBC Corporation, on this 15th day of August, 2017.

_____          ✓ Personally known to me
NOTARY PUBLIC
My Commission Expires: 3/8/2020          _____ Produced identification

JOLEN MEDWID
MY COMMISSION # FF967638
EXPIRES March 08, 2020
(407) 398-0153   FloridaNotaryService.com

11

| EXHIBIT A | | | |
|---|---|---|---|
| Last Name | First Name | Settlement Payment, before Applicable Deductions | Notes |
| Arbitration Plaintiffs | | | |
| AGOSTO | PEDRO | $ 810.01 | |
| AYALA RIVERA | SAMUEL | $ 609.47 | |
| BAIARDI | JOSEPH | $ 684.90 | |
| BALTODANO | FELIPE | $ 1,139.81 | |
| BANKS | RANSLER | $ 637.53 | |
| BARLOW | BRYAN | $ 884.07 | |
| BATTISTIN | JOSHUA | $ 638.91 | |
| BEMIS | KENNETH | $ 1,139.81 | |
| BIGANINI | ANTHONY JOSEPH | $ 669.27 | |
| BINGHAM | MICHAEL | $ 681.22 | |
| BOUCHARD | HENRY | $ 697.32 | |
| BOWLING | MICHAEL | $ 705.14 | |
| BRECHT | SHAWN | $ 518.86 | |
| BUCE | ALBERT | $ 771.84 | |
| BURNHAM | ROBERT | $ 723.08 | |
| BURTON | DUANE | $ 1,003.66 | |
| CARMONA FIGUEROA | IVAN | $ 618.21 | |
| CARR | JAMIE | $ 622.35 | |
| CARRASCO | WILLYS | $ 866.59 | |
| CATANIA | VINCENT | $ 749.30 | |
| CHEREEK | STEPHEN | $ 600.27 | |
| CLARK | MATTHEW | $ 668.99 | |
| CONRAD | JOSEPH | $ 719.86 | |
| COOPER | JOHN | $ 678.46 | |
| CROSS | TIMOTHY | $ 602.57 | |
| DANOW | MICHAEL | $ 682.60 | |
| DAVENPORT | ROY | $ 782.88 | |
| DAVIDSON | CHARLES | $ 1,003.66 | |
| DAVILA | HECTOR | $ 1,001.36 | |
| DELEMOS | VINCENT | $ 934.66 | |
| DENZIN | NICHOLAS | $ 808.17 | |
| DESIMONI | COREY | $ 879.66 | Named Plaintiff |
| DEVLIN | RICHARD | $ 631.09 | |
| DOMINGUEZ | KYLE | $ 718.02 | |

12

| | | | |
|---|---|---|---|
| DOYLE | CHRISTOPHER | $ | 1,001.36 |
| EDMISTON | CHRISTOPHER | $ | 615.91 |
| EDOUARD | JOEL | $ | 1,003.66 |
| FERPAS | JUSTIN | $ | 685.82 |
| FIELDS | RODERICK | $ | 561.63 |
| FOUTS | GERALD | $ | 778.28 |
| FRIEDMAN | IAN | $ | 526.22 |
| GARZA | JUAN | $ | 826.57 |
| GIER | JOSH | $ | 519.78 |
| GILMORE | WALLACE | $ | 564.39 |
| GOLDMAN | RUDOLPH | $ | 779.20 |
| GONZALES | RAMON | $ | 501.84 |
| GORDON | GEORGE | $ | 634.31 |
| GORDON | YVES | $ | 618.67 |
| GUEVARA | JESUS | $ | 951.68 |
| GUGEL | STEVEN | $ | 683.35 |
| GUIDA | MATTHEW | $ | 681.68 |
| GUIDO | MARIO | $ | 1,001.36 |
| GUINDIN | EMANUEL | $ | 554.28 |
| HACK | ROBERT | $ | 1,003.66 |
| HATCHER JR | FORREST | $ | 612.23 |
| HAYNIE | MARCUS | $ | 528.52 |
| HERNANDEZ | EDWIN | $ | 566.69 |
| HERRING | D'ANDRE | $ | 838.99 |
| HILL | RICHARD | $ | 1,003.66 |
| HOYT | FRANKLIN | $ | 569.91 |
| HUNT | RONALD | $ | 1,003.66 |
| ISAZA JR. | EDISON | $ | 649.49 |
| JACKETT | JOSEPH | $ | 1,084.61 |
| JACKSON | DAVID | $ | 523.46 |
| JIMENEZ | ANIBAL C | $ | 631.55 |
| JIMENEZ | GUILLERMO | $ | 659.61 |
| JIMENEZ | KENNETH | $ | 668.81 |
| JOHNSON | BRYAN | $ | 1,107.15 |
| JOHNSON | ZACHARY | $ | 655.20 |
| KAUK | DAVID | $ | 893.73 |
| KORSUN | JOHN | $ | 1,003.66 |
| KOS | ALEN | $ | 847.27 |
| KRAUM | KURTIS | $ | 614.53 |
| KRAUSS JR | DAVID | $ | 1,003.66 |

| | | | | |
|---|---|---|---|---|
| LAFFER | RANDY | $ | 938.34 | |
| LAJEUNESSE | JAMES | $ | 697.78 | |
| LANE | JEREMY | $ | 586.93 | |
| LECOMPTE | RICHARD | $ | 1,003.66 | |
| LEMONS | SHAWN JASON | $ | 1,007.34 | |
| LESTER | QUENTIN | $ | 753.44 | |
| LEVERT | WILLIAM | $ | 1,001.36 | |
| LOVELAND | ANTHONY C. | $ | 597.51 | |
| MANFRE | ANTHONY | $ | 744.24 | |
| MARTINEZ | GIANCARLO | $ | 782.88 | |
| MATHESON | MATTHEW | $ | 1,003.66 | |
| MAYLE | FREDERICK | $ | 716.18 | |
| MCCALL | RAY | $ | 614.07 | |
| MCCRAY | RICKY | $ | 1,003.66 | |
| MCGRAW | DAVID | $ | 604.87 | |
| MELENDEZ | ANGEL | $ | 861.99 | |
| MERGEN | FREDERIC | $ | 623.27 | |
| MILLER | JEFFERY | $ | 620.51 | |
| MILLER | SCOTT | $ | 652.37 | |
| MINNS | JUSTIN | $ | 1,003.66 | |
| MIRAGLIA | JOSEPH | $ | 623.00 | |
| MIRANDA | HECTOR | $ | 636.15 | |
| MONTALVO | MIGUEL | $ | 713.88 | |
| MOORE | STEVIE | $ | 605.33 | |
| MULLEN | DAVID | $ | 1,003.66 | |
| MULLINGS | ERIC | $ | 1,003.66 | |
| MUNIZ | GREGORIO | $ | 791.62 | |
| MYERS | WOODY | $ | 914.88 | |
| NASH | CHARLES | $ | 629.71 | |
| NAZARIO | MARTIN | $ | 810.93 | |
| NIN-SAMOL | ANGEL L. | $ | 1,003.66 | |
| O'BRIEN | FRANCIS | $ | 657.31 | |
| PATE | JOSHUA | $ | 1,003.66 | |
| PAVON | VADIM | $ | 842.67 | |
| PEREZ | ALFREDO | $ | 847.73 | |
| PEREZ | JOSE MANUEL LEON | $ | 604.41 | |
| PERKINS | ANTHONY | $ | 1,003.66 | |
| PERKINS | GRADY | $ | 714.80 | |
| POST | STEVEN | $ | 1,001.36 | |

14

| | | | |
|---|---|---|---|
| POWELL | DON | $ | 1,003.66 |
| PRITCHARD | ROBERT | $ | 836.23 |
| PROCACCINO | JOSEPH | $ | 885.91 |
| RIOS NIETO | JOSE | $ | 596.59 |
| RIVERA | CARLOS | $ | 872.57 |
| RIVERA | FERNANDO | $ | 555.66 |
| RIVERA | LUIS | $ | 1,003.66 |
| RIVERA | NOEL | $ | 665.13 |
| RODENBAUGH | BLAINE | $ | 686.28 |
| RODRIGUEZ | LUIS | $ | 779.93 |
| RODRIGUEZ | NELVIS | $ | 551.06 |
| ROGERS | CORNELIUS | $ | 735.96 |
| ROMERO | LUIS | $ | 742.13 |
| ROTHWELL | JOSEPH WESLEY | $ | 604.87 |
| RUCKER | STEVEN | $ | 660.07 |
| SALVADOR | RICHARD | $ | 799.89 |
| SANCHEZ CRUZ | LUIS ALEXIS | $ | 690.88 |
| SAPORITA | JOHN | $ | 604.14 |
| SCOTT | DAVID | $ | 613.34 |
| SEVERIN | GEORGE | $ | 579.57 |
| SHERIDAN | HEATHER | $ | 638.91 |
| SHIEVDAYAL | STEVEN | $ | 872.11 |
| SHOUN | NICHOLAS | $ | 858.31 |
| SHULER | CLINTON | $ | 645.08 |
| SILVA | DAVID ARMANDO | $ | 878.55 |
| SLATER | JASON | $ | 542.78 |
| SMITH | JOHNNY | $ | 704.22 |
| SMITH | JOSEPH | $ | 644.89 |
| STACY | JASON | $ | 624.19 |
| TUCKER | KENNETH | $ | 968.70 |
| VEGA | MARIO | $ | 909.83 |
| WESCOTT | HAROLD LEO | $ | 634.77 |
| WIGDAHL | RYAN | $ | 709.28 |
| WILDER | THOMAS | $ | 671.11 |
| WILLIAMS | ERIC | $ | 1,003.66 |
| WILLIS | SHANE | $ | 603.95 |
| WINANS | JOSHUA | $ | 1,139.81 |
| WOODSIDE | MARK | $ | 926.38 |
| YOUNG | GUY | $ | 636.15 |

WSACTIVELLP:9278783.1

| | | | | |
|---|---|---|---|---|
| YOUNG | WAYNE | $ | 1,003.66 | |
| **Sub Total (Arbitration)** | | $ | **117,157.23** | |
| Litigation Plaintiffs | | | | |
| BENITEZ | AUGUSTIN | $ | 680.49 | |
| CHAPMAN | JASON | $ | 662.44 | |
| CLARK | JACK | $ | 589.69 | |
| DANIEL | JASON | $ | 580.95 | |
| DUKES | DAVIN | $ | 500.00 | |
| FRAZIER | FRANKLIN | $ | 500.00 | |
| GILZENE | PETER | $ | 577.73 | |
| HILL | TOMMY | $ | 538.64 | |
| HORTON | JIMMY | $ | 530.82 | |
| JANSON | JOHN | $ | 640.48 | |
| LOPEZ | JUAN | $ | 566.23 | |
| MURPHY | WILLIAM | $ | 504.14 | |
| PURVEE | LEONARD | $ | 578.65 | |
| REITER | JAMES | $ | 713.15 | Named Plaintiff |
| SCHULTZ | KENNY | $ | 785.18 | |
| SHOCKLEY | PERRY | $ | 775.43 | |
| VAUGHN | TIMOTHY | $ | 680.62 | |
| WARDEN | RYAN | $ | 524.38 | |
| WEBSTER | TIMOTHY | $ | 613.80 | |
| WILLIAMS | WILLIE | $ | 513.81 | |
| YINGER | JASON | $ | 569.91 | |
| **Sub Total (Litigation)** | | $ | **12,626.55** | |
| | | | | |
| **Total Payments to Plaintiffs, before Applicable Deductions** | | $ | **129,783.78** | |

16

WSACTIVELLP:9278783.1